UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| MARK A. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-306 |
| | ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 13]. The Plaintiff Mark A. King ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") K. Dickson Grissom to deny him benefits, which was the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 5, 2007, the Plaintiff filed an application for supplemental security income ("SSI") and an application for disability insurance benefits ("DIB"). [Tr. 80-83]. On the application, the Plaintiff alleged a period of disability which began on March 15, 2002. [Tr. 80-83]. On January 28, 2008, ALJ Grissom held hearings, and then issued a decision finding the Plaintiff "not disabled."

1

[Tr. 12-28]. On May 6, 2010, the Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 2-5]. The Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.

2. The record provides no direct evidence that the claimant has engaged in substantial gainful activity since March 15, 2002, the alleged onset date (20 CFR 404.1520(b), 20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic bilateral foot pain and deformity due to remote traumatic injury and status-post multiple reconstructive surgeries on both feet, resulting in an amputated left great toe and bone loss in both feet (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except that he cannot perform any climbing or more than occasional stooping, bending from the waist to the floor, crouching, or crawling. He must also be able to alternate between sitting and standing at will.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 14, 1970 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CRF 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in

    English (20 CFR 404.1564 and 416.964).

  9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

  10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

  11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2002 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-20].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work.  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps.  Id.  The burden of proof shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings.  Longworth v. Comm'r of

Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

The Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, the Plaintiff contends that (1) the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence; (2) the ALJ failed to consider the Plaintiff's mental impairment; and (3) the ALJ failed to properly consider the Plaintiff's disabling pain. [Doc. 10 at 7-18]. In the alternative, the Plaintiff argues that the Court should remand this case under sentence six for the purpose of considering new evidence. [Doc. 10 at 19]. The Commissioner responds that (1) the ALJ appropriately evaluated all the evidence when making his RFC determination; (2) the record does not support the existence of a mental impairment; (3) the ALJ reasonably evaluated the severity of the Plaintiff's pain; and (4) the Plaintiff is not entitled to

a sentence six remand in this case. [Doc. 14 at 15-19].

### A. The ALJ's Physical RFC Determination

The Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. The Plaintiff asserts that the ALJ failed to properly consider the medical opinions of record. [Doc. 10 at 7-10]. Specifically, the Plaintiff argues that the ALJ (1) failed to discuss and evaluate a reviewing state agency opinion of Larry W. McNeil, M.D., as required by the regulations and rulings; (2) failed to assign proper weight to his treating physician, William Broome, M.D.; and (3) did not mention the evaluation of M. Chris Testerman, M.D., in which he opined that it would be "reasonable for that [the Plaintiff] consider social security disability." [Doc. 10 at 10-11]. The Commissioner responds that the ALJ's RFC determination was supported by substantial evidence and that the Plaintiff mischaracterizes the ALJ's evaluation of the record. [Doc. 14 at 15].

First, the Court will address the Plaintiff's argument that the ALJ failed to discuss the opinion of state agency reviewing physician, Dr. McNeil  The Plaintiff contends that this is a violation 20 C.F.R. §§ 404.1527(b), 416.927(b) and SSR 96-6p.

The regulations require an ALJ to "always consider the medical opinions" in a claimant's case. 20 C.F.R. § 404.1527(b). Moreover, the rulings require the following:

> Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and explain the weight given to the opinions in their decisions.

SSR 96-6p, 1996 WL 374180, at *2 (1996). The Plaintiff asserts that the ALJ did not consider Dr. McNeil's opinion that he is limited to occasional operation of foot controls bilaterally and to occasional balancing when evaluating the Plaintiff's RFC.

6

The Court disagrees with the Plaintiff. The ALJ expressly discussed the weight he afforded the state agency reviewing physicians of record. The ALJ stated that:

> The postural limitations and sit/stand option provided in the residual functional capacity further accomodate the [Plaintiff's] subjective complaints of pain and are consistent with the functional assessments of the state agency physicians.

[Tr. 17-18].

From this discussion, the ALJ was aware of his obligation to consider and weigh the state agency opinions, one of which was Dr. McNeil's opinion. The ALJ indicated that he considered and evaluated Dr. McNeil's opinion by incorporating the postural limitations of occasional stooping, bending from the waist to the floor, crouching, or crawling and providing a sit/stand option in his residual functional capacity assessment. See Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 664 (6th Cir. 2004) (holding that the ALJ met the his obligation under SSR 96-6p by briefly discussing the opinions of state agency consultants as a whole). Therefore, the ALJ did not ignore the opinion of Dr. McNeil, but accounted for the opinion in his RFC determination. Accordingly, the Court finds that the ALJ met the requirements of the regulations and rulings in this case by both considering and evaluating the opinions of the state agency physicians.

Second, the Plaintiff argues that the ALJ failed to afford Dr. Broome, his treating physician, proper weight. The ALJ stated, however, that Dr. Broome's opinion was "largely consistent" with his RFC determination. [Tr. 17].

In this case, the ALJ found that Plaintiff was capable of sedentary work,[1] except that he

---

[1] Sedentary work is defined as "involving lifting no more than 10 pounds at a time" and "walking and standing are required occasionally." SSR 83-10, 1983 WL 31251, at *5 (1983). This definition is consistent for both Title II and Title XVI claims. 20 CFR §§ 404.1567(a), 416.967(a).

cannot perform any climbing or more than occasional stooping, bending from the waist to the floor, crouching, or crawling, and that he must be able to alternate between sitting and standing at will. [Tr. 16]. Similarly, Dr. Broome opined that the Plaintiff was capable of occasionally lifting/carrying 15 pounds and frequently lifting/carrying 5 pounds; standing up to two hours in a normal 8-hour workday and a maximum of 10 minutes at a time; walking up to 2 hours in a normal 8-hour work day and up to 5 minutes at a time; occasionally squat; occasionally stair climb; sit for up to four hours in an 8-hour work day and up to 60 minutes at a time. [Tr. 102]. This portion of Dr. Broome's opinion was consistent with the ALJ's RFC determination, and therefore, the ALJ afforded Dr. Broome's opinion great weight.

The ALJ, however, afforded no weight to Dr. Broome's opinion that the Plaintiff could not work 8 hours a day, 40 days a week because such an opinion "necessarily requires a vocational analysis reserved for the Commissioner." [Tr. 17]. Under the regulations, an opinion from a medical source that finds a claimant is "unable to work" or any other opinion on an issue that is "dispositive of a case [which] would direct the determination or decision of disability" is not considered a "medical opinion." 20 C.F.R. § 404.1527(e). Rather, a medical source opinion on an issue which is "reserved to the Commissioner" is accorded no "special significance." Id. The RFC determination is expressly reserved for the Commissioner. Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004).

Dr. Broome's opinion that the Plaintiff could not work 8 hours a day was an alternative way of stating that the Plaintiff was unable to work. See Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 493 (6th Cir. 2010) ( finding a treating source who opined that the plaintiff was unable to work a "full-time 8-hour workload" was an alternate way of restating the opinion that the plaintiff was

8

"unable to work"). Thus, Dr. Broome's assessment was an opinion on an issue reserved to the Commissioner and is of no special significance. Additionally, the ALJ's decision specifically explained his reason for discounting this portion the opinion by stating that Dr. Broome's opinion requires a "vocational analysis that is reserved to the Commissioner." [Tr. 17]; see id. (concluding that the ALJ 's decision "adequately explained the consideration given" to the treating source opinion when the ALJ specifically noted that the issue was reserved for the Commissioner).

Similarly, the Plaintiff argues that the ALJ failed to consider the evaluation of Dr. Testerman in which he opined that it would be "reasonable that [the Plaintiff] consider social security disability." [Tr. 244]. Such a statement is conclusory and is insignificant when determining the Plaintiff's RFC. Indeed, such a conclusory statement is not a medical opinion that an ALJ must consider. See 20 C.F.R. § 404.1527(a)(2). As previously noted, the RFC determination is reserved for the Commissioner. Moreover, Dr. Testerman's medical findings support the ALJ's decision. For example, Dr. Testerman's impression was that the Plaintiff suffered from bilateral foot deformity and neurogenic pain status post severe trauma. Such an opinion is consistent with the ALJ's determination of the Plaintiff's severe impairments. [Tr. 244]. In addition, Dr. Testerman opined that the Plaintiff's limitations consisted of "difficulty in prolonged weightbearing activities and standing because of foot mechanics." [Tr. 244]. The ALJ considered and accounted for such limitations in his RFC determination which limits the Plaintiff to sedentary work with additional postural limitations and a sit/stand option.

Accordingly, the Court finds that the ALJ properly considered and evaluated the medical opinions of record and his RFC determination was supported by substantial evidence.

## B. The Plaintiff's Mental Limitations

The Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to consider the impact of his mental impairments on his ability to work. [Doc. 10 at 11]. In support of his argument, the Plaintiff asserts that his testimony at the hearing, along with his treatment at the Tennessee Valley Integrative Pain Center, indicate that he suffers from a mental impairment. [Doc. 10 at 11-12]. The Plaintiff, however, acknowledges that the Tennessee Valley Treatment record is "incomplete and not very informative." [Doc. 10 at 12]. In addition, the Plaintiff argues that the ALJ erred by not ordering a consultative examination nor obtaining medical expert testimony to assess his mental condition. [Doc. 10 at 14-15]. The Commissioner responds that the record does not support a conclusion that the Plaintiff suffers from any mental limitation. [Doc. 17].

First, the Court finds that the ALJ did not commit error by failing to evaluate the existence of a mental condition. In a proceeding before the ALJ, it is the claimant who bears the burden of providing a complete set of records. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2002). The Plaintiff failed to produce sufficient evidence which would allow the ALJ to evaluate the four areas of functioning required by the "special technique." See 20 C.F.R. §§ 404.1520(a), 416.920(a). Specifically, the Plaintiff did not produce evidence that he was suffering from a mental impairment that impacted his activities of daily living, social functioning, and concentration, persistence, and pace. Id. Moreover, the record contains no documented episodes of decompensation. Id.

For example, while the Plaintiff stated during the administrative hearing that he sometimes felt depressed when he was not working [Tr. 327], treatment notes from the Morristown Pain Consultants routinely reflect the medical opinion that Plaintiff was not suffering from depression or

10

anxiety. [Tr. 295, 296, 298, 299-301]. In addition, there is no medical opinion in the record that supports the Plaintiff's self-reported diagnosis of depression. While the Plaintiff asserts that he was diagnosed with anxiety/stress, it is notable that the record is devoid of a medical opinion finding that the Plaintiff suffers from non-exertional limitations as a result of his mental impairment. The Plaintiff also notes that he was prescribed medications while undergoing treatment at the Tennessee Valley Integrative Pain Center (including Xanax, Valium, and Remeron), however, there is no indication that such medications were prescribed on account of a mental limitation. [Tr. 208-227].

In addition, the Plaintiff's father reported that the Plaintiff was capable of performing in the areas of functioning contemplated by the regulations when evaluating a mental impairment. 20 C.F.R. §§ 404.1520(a), 416.920(a). For example, the Plaintiff's father reported that the Plaintiff prepared his own meals [Tr. 162], had no problems getting along with family, friends and others [Tr. 164], got along well with authority figures [Tr. 165], and had not exhibited unusual behavior or fears [Tr. 166].[2]

Second, the Court finds that the ALJ did not commit error by failing to order a consultative examination or obtain medical expert testimony regarding the Plaintiff's mental condition.

The Sixth Circuit Court of Appeals has held that a claimant must produce sufficient evidence of a mental impairment before an ALJ has an obligation to order a consultative examination. Marcum v. Comm'r of Soc. Sec., 205 F.3d 1341, 2000 WL 92262, at *4 (6th Cir. 2000) (unpublished table decision). In Marcum, the plaintiff argued that the ALJ was required to obtain

---

[2]While the Plaintiff asserts that he reported that he does not spend time with others, does not go anywhere on a regular basis, does not feel like going out or being around people, has difficulty concentrating, and does not handle stress well, his father reported these observations in relation to his physical impairment.

a medical expert assessment regarding his mental limitations. Id. In support of his argument, the plaintiff identified a physician's report of some depression and a prescription to Amitriptyline. Id. Additionally, the plaintiff also testified at the hearing that he was "depressed a lot." Id. The Court of Appeals found that such evidence was insufficient "to raise an inference of a medical impairment." Id. Thus, the court held that the ALJ did not commit error by failing to obtain a medical expert to evaluate the plaintiff's mental condition. Id.

In this case, the Plaintiff argues that based on the limited evidence of his mental impairment, it was the duty of the ALJ to order a consultative examination or obtain medical expert testimony. Similar to Marcum, the Plaintiff identifies a diagnosis of anxiety/stress, lists his prescribed medications as Xanax, Valium, and Remeron, and testified at the hearing that he becomes depressed when he is not working. As the court held in Marcum, this is not sufficient evidence to raise an inference of a mental impairment. Therefore, the Court concludes that the ALJ did not commit error by failing to order a consultative examination or obtain expert testimony in order to assess the Plaintiff's mental condition in this case.

Accordingly, the Court finds that the Plaintiff failed to produce sufficient evidence that he suffered from a mental impairment, and therefore, the ALJ did not commit error by failing to evaluate the Plaintiff's mental condition, order a consultative examination, or obtain expert testimony.

### C. ALJ's Evaluation of the Plaintiff's Pain

The Plaintiff argues that the ALJ failed to properly consider his disabling pain. [Doc. 10 at 16]. Specifically, the Plaintiff contends that his subjective complaints of pain are supported by

substantial evidence. [Doc. 10 at 18]. The Commissioner contends that the ALJ considered and evaluated the Plaintiff's pain complaints. [Doc. 14 at 18]. Specifically, the Commissioner asserts that the ALJ identified the Plaintiff's severe impairment of bilateral foot pain, but properly found that the impairment did not rise to a disabling level. [Doc. 14 at 18]. Moreover, the Commissioner argues that "[t]he finding of a severe impairment does not mean a finding of 'severe' foot pain." [Doc. 14 at 19].

The Sixth Circuit Court of Appeals has held that "[i]t is well settled that pain alone, if the result of a medical impairment, may be severe enough to constitute disability." King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). When evaluating a claimant's assertions of disabling pain, the Court of Appeals follows a two-prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain.

Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994); see also 20 C.F.R. § 404.1529(a).

In this case, the ALJ properly considered the Court of Appeals's two-prong pain test when assessing the Plaintiff's subjective claims of disabling pain. The ALJ found that while the Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, he found that the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" were not entirely credible. [Tr. 18]. In reaching this conclusion, the ALJ considered several factors, such as the objective medical evidence and the Plaintiff's daily activities. [Tr. 17-18]; see 20 C.F.R. §§ 404.1529(c), 416.929(c). Moreover, the ALJ found the Plaintiff's overall credibility "suspect" because portions of the Plaintiff's testimony were in direct conflict with the record evidence. [Tr.

13

18].

First, the ALJ considered the objective medical evidence of record. The ALJ noted that the Plaintiff received limited medical treatment after 1985 for his ankle impairment. [Tr. 17]. The ALJ emphasized that the Plaintiff has a "very remote history of traumatic injuries to both feet." [Tr. 17]. In addition, the ALJ indicated the Plaintiff was treated conservatively by finding that the Plaintiff "has not required any surgeries since 1985 and he has been treated solely with pain medications since then." [Tr. 17]. Further, the ALJ stated that the Plaintiff was "able to work as a plumber from 1988 to 2002 with no apparent deterioration in the physical condition of his feet that was serious enough to warrant surgery." [Tr. 17]. Notably, the ALJ indicated that the Plaintiff's "pain clinic practitioners repeatedly denied his requests for additional narcotic pain relievers and tranquilizers, including Oxycontin and Xanax." [Tr. 17].

Second, the ALJ considered the Plaintiff's daily activities. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c) (3)(iv). The ALJ noted that the Plaintiff's father reported that the Plaintiff was capable of preparing his own meals, such as eggs and bacon. [Tr. 18; 162]. Additionally, the Plaintiff father stated that the Plaintiff was able to drive and that he goes outside daily. [Tr. 18; 163]. In addition, the ALJ indicated that the Plaintiff testified that he continued to go fishing, and despite the Plaintiff's argument that there was limited walking involved, the activity of fishing indicates that the Plaintiff is capable of either sitting or standing for a period of time while engaging in the activity. [Tr. 18].

Moreover, the ALJ noted that the Plaintiff's testimony at the hearing was inconsistent with the record evidence. For example, at the hearing, the Plaintiff testified that had not worked since 2002. [Tr. 17; 318]. As the ALJ noted, however, the Plaintiff made an admission to his pain clinic

physicians in 2003 that he was still working as a plumber. [Tr. 213; 218]. As a result of the contradictions between the Plaintiff's hearing testimony and the record evidence, the ALJ concluded that the Plaintiff's "overall credibility is suspect." [Tr. 18].

Accordingly, the Court finds that the ALJ properly followed the Sixth Circuit Court of Appeals's two-prong test for evaluating the Plaintiff's claims of pain. The Court also finds that substantial evidence supports the ALJ's pain analysis.

### D. Sentence Six Remand

The Plaintiff argues that he is entitled to a sentence six remand to allow the ALJ to consider new evidence in his case. [Doc. 10 at 19]. The Commissioner contends that the new evidence provides no material information, as the evidence "is entirely similar to the information [the Plaintiff] presented to the ALJ." [Doc. 14 at 19].

A court will review post-hearing evidence for the limited purpose of determining whether a remand is warrant pursuant to sentence six of 42 U.S.C. § 405(g). In order for a claimant to obtain a sentence six remand, he must meet three requirements: "The evidence must be both (1) new and (2) material, and (3) the claimant must demonstrate good cause for her failure 'to incorporate such evidence into the record in a prior proceeding.'" Hensley v. Comm'r of Soc. Sec., 214 F. App'x 547, 550 (6th Cir. 2007) (quoting Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006)).

In this case, the Plaintiff submits evidence that was both obtained subsequent to the ALJ's February 5, 2008 decision and evidence that was in existence at the time of the ALJ's decision. The Court will address the additional evidence below.

15

### (i) Evidence Obtained Subsequent to the ALJ's Decision

First, the Court will address evidence that was not in existence at the time of the administrative hearing. In order to satisfy the requirement that evidence be new, the Plaintiff must show that the additional evidence which he is seeking to introduce was unavailable to him at the time of the administrative proceeding. As the United States Supreme Court has stated, evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); see Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)

While the Plaintiff presents the Court with "new" evidence in this case, the issue for the Court becomes whether such evidence is "material." When a court analyzes whether such evidence is material, the inquiry is whether "there is reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Foster, 279 F.3d at 357 (internal citations and quotations omitted).

In this case, the Plaintiff largely presents information restating that his bilateral foot deformity caused him pain. Such information was before the ALJ at the administrative proceeding in this case.

First, the Plaintiff identifies a February 19, 2008, evaluation performed by Morristown Pain Consultants. The examination identified that the Plaintiff suffered from "feet trauma and amputation of the bilateral heels . . . that has been surgically addressed with muscle flap, skin graft and casted" [Tr. 308]. This opinion is similar to the Dr. Testerman's August 2005 impression that the Plaintiff had bilateral hindfoot deformity and neurogenic pain status post severe trauma, free flaps and reconstruction with some probable post-traumatic arthritis. [Tr. 244]. In addition, during the

16

February 19, 2008 assessment, the Plaintiff complained of bilateral foot pain that "worsened with walking, sitting and standing for a longtime in the same position, and weightbearing activities." [Tr. 306]. These complaints are duplicative of the Plaintiff's testimony at the administrative hearing that he is unable to sit or stand on his feet for long periods of time because of swelling in his feet. [Tr. 318-19]; see Sizemore, 865 F.2d at 712 (holding that medical records created after the ALJ's disability determination which show a lack of improvement in an existing condition cannot establish disability at the time of the disability determination).

The February 19, 2008 assessment does not contain significantly different findings than the medical records that the ALJ considered during the administrative proceeding. The Court finds that such a record does not provide a basis for finding that there is a reasonable probability that the ALJ would have reached a different disability decision in this case.

Second, the Plaintiff cites Morristown Pain Consultants treatment notes from March 17, 2008 to January 23, 2009, as support for his argument that he is entitled to a sentence six remand. The Plaintiff indicates that these records establish that he was suffering from severe bilateral foot pain, chronic bilateral foot pain, chronic low back pain, chronic bilateral knee pain, sleep disturbance, and muscle spasms. [Tr. 293-305]. The impressions found in the medical treatment notes are identified by checkmarks, and fail to support or explain such findings with objective medical evidence. Notably, the treatment notes do not reflect any additional functional limitations due to the Plaintiff's chronic bilateral foot pain, chronic low back pain, chronic bilateral knee pain, sleep disturbance, and muscle spasms. Therefore, the Court finds the new treatment notes do not provide a basis for finding that there is a reasonable probability that the ALJ would have reached a different disability decision.

Third, the Plaintiff cites nine additional pages of treatment notes from Dr. Broome. [Tr.

282]. Only one of those treatment notes was written subsequent to the ALJ's decision in this case. In June 2008, Dr. Broome indicated that the Plaintiff was attempting to pass a kidney stone, however, the note fails to address additional evidence of foot pain. [Tr. 287]. The Court finds that the passing of a kidney stone is not material in this case, as there is not a reasonable probably that it would change the ALJ's disability decision.

Fourth, The Plaintiff also points to a subsequent favorable disability decision as evidence supporting his argument. In this decision, the Plaintiff states that ALJ Newkirk essentially relied on the "same evidence at bar" in this case. [Doc. 10 at 21]. The Sixth Circuit Court of Appeals has found that "it is overly broad to read the words 'new evidence' in sentence six to include a subsequent decision based on the same evidence." Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009). Additionally, the Court of Appeals stated that "[t]he subsequent determination that [the claimant] was disabled does not warrant a remand of his initial benefits denial." Id. Therefore, the Court finds that the Plaintiff's subsequent favorable disability determination does not provide new or material evidence in the instant matter.

Moreover, the Plaintiff offers no explanation regarding whether this evidence meets the "good cause" test, other than stating that the evidence was not available at the time of the hearing. [Doc. 10 at 22]. The Sixth Circuit Court of Appeals takes a hard line on the good cause test, and requires a Plaintiff to demonstrate more than the fact that records were prepared after the ALJ's decision. Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986).

Therefore, the Court finds that the new evidence presented by the Plaintiff fails to meet the materiality requirement required to remand a case pursuant to sentence six. Moreover, the Court finds that the Plaintiff failed to show good cause for his failure to incorporate such evidence in the

proceeding before the ALJ.

### (ii) Evidence in Existence During the Relevant Time Period

The Plaintiff also submitted evidence that existed at the time of the administrative hearing in this case.

The Plaintiff identifies treatment notes from Dr. Broome which were in existence during the time of the administrative hearing. Specifically, the Plaintiff cites a treatment note written on April 18, 2006, in which Dr. Broome opines that the Plaintiff is "unable to work because of pain in his feet, as well as ulceration, breakdown and oozing that occurs." [Tr. 291].

In this case, the 2006 treatment note does not constitute new evidence as it was in existence at the time of the hearing. Further, this evidence is not material because similar evidence was before the ALJ regarding a previous conclusory opinion of Dr. Broome's on the ultimate issue of disability. Thus, the introduction of such evidence would not cause the ALJ to reach a different conclusion.

Accordingly, the Court finds that the April 2006 treatment note from Dr. Broome does not constitute either new or material evidence, and therefore, does not entitle the Plaintiff to a remand pursuant to sentence six.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** that the Commissioner's Motion for Summary Judgment **[Doc. 13]** is **GRANTED** and that the Plaintiff's Motion for Summary Judgment **[Doc. 9]** be **DENIED**.[3]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).